YARRUT, Judge.
This appeal is by Defendant from a judgement granting Plaintiff workmen’s-, compensation of $35.00 per week for 400 weeks, less credit for -compensation previously paid, with interest and costs, but denying Plaintiff statutory damages and attorney’s fees-under LSA-R.S. 22:658 -for arbitrarily and capriciously terminating- compensation, due him.
There is no question that Plaintiff sustained serious injury during the course of his employment. The sole question is whether he was sufficiently, recovered t© resume work of a similar character he was doing when injured, to-wit, hard labor.
In April, 1961, while 'Plaintiff was employed as a laborer operating a grinding *332 machine grinding concrete seams in a school building for his employer Manson, Smith, McMasters, Inc., a scaffold board fell on his back. He was first treated by Dr. Ettinger; then on October 9, 1961, Dr. Byron Unkauf, orthopedist, had him admitted to the Flint-Goodridge Hospital in New Orleans where he was treated by Dr. Un-kauf until October 25, 1961.
Because Plaintiff continued to suffer back pains he was admitted to Touro Infirmary where Dr. Unkauf conducted a myelogram disclosing herniation to the left side of the 4th and 5th intervertebrae spaces, which required surgery to correct. In January, 1964, Dr. Unkauf performed a lumbar laminect-omy, from which Plaintiff complains he continues to suffer.
Plaintiff contends he is still unable to perform work of a reasonable character comparable to what he was doing at the time of his injury without suffering pain; which he had to endure to support a wife and three children.
Plaintiff was the only lay witness to testify at the trial. Dr. Unkauf and Dr. Gernon Brown were the only medical witnesses. Plaintiff testified that in August, 1963, prior to his discharge by Dr. Unkauf on September 4, 1963, he secured employment at Avondale Shipyards, Inc. and continued to work there until he was laid off, not because of any back trouble; that, after being laid off at Avondale, he went to work for a Mr. R. J. Dinvant, driving a heavy truck during the sugar cane grinding season until the grinding season was over, when he returned to work at Avondale where he continued his employment (operating a chipping gun) until shortly before the trial.
In describing the work he performed after his injury, Plaintiff testified that while working at Avondale he operated a chipping gun six days a week for eight hours a day.
While -working for Mr. Dinvant during the sugar cane grinding season, Plaintiff drove a seven-ton truck at least six days a week, during the entire grinding season, from 6:30 in the morning to 4:30 in the afternoon; assisting in the loading of the truck, then driving from the plantation to the refinery over rough roads, assisting in the unloading of the truck and then returning to the plantation to commence the process again; averaging about four loads a day, with no helper; that the sugar cane was hoisted in bundles by crane and that he, Plaintiff, used a twelve-foot pole to push and guide the two-to-three-ton bundles into place in the truck. When he arrived at the mill, Plaintiff would climb up on the load in the truck and hook a chain on to the individual bundles for removal by another crane.
Dr. Unkauf confirmed the fact that, when he last saw Plaintiff on September 4, 1963, and discharged him, he knew Plaintiff had been working at Avondale and was planning to drive a “dump truck” during the sugar cane grinding season but Dr. Unkauf did not advise him against it.
Dr. Unkauf testified that, when he discharged Plaintiff, he advised him to return to him in the event he had any recurrence of his back trouble, but Plaintiff had never been back, and that he estimated Plaintiff has a 25% loss of function of the back and body, but did not feel that heavy work would be deleterious to Plaintiff’s health.
Dr. Unkauf was also of the opinion that Plaintiff has a high pain threshold, that is, tolerates pain better than average.
Dr. Unkauf did not believe Plaintiff suffers acute pain, but a low grade, constant type of pain that varies from day to day.
Pertinent parts of Dr. Unkaufs testimony which impress us as they must have the district judge, arc :
“Q What about the duration of this pain, Doctor?
“A Oh, you’ll see it. I was trying to think of the longest I have ever heard of it being present. I have seen it in patients whom I have done *333 five or six years previously, stating that it appears periodically. It’s not maybe as marked as it was, but it is interfering with what they want to do on occasions.
******
“A Now, whether longer periods of pain persist, I really don’t know for the simple reason that you see a man like Willie Wilson and you may not see him — like Willie Mitchell and I may not see him for five or six years and I may never see him again. Sometimes you don’t have a good follow-up as to how much discomfort they are having, but I see a lot of backs and they all have complaints of pain postoperatively. And, of course, some of them have to have second or more courses of surgery done to try and get relief of the very acute pain, but Willie doesn’t suffer from this. He is suffering chiefly from a low-grade constant type of pain that varies from day to day.
******
“Q Now, Dr. Unkauf, when Willie Mitchell came to see you on the 30th of April, 1963, he apparently told 3'ou that shortly before that he was cutting his lawn with a large power mower, tried to lift it and hurt his back; was that correct, sir?
******
“A When he was seen on the 30th of April, he stated that he had been cutting the lawn and was putting the lawn mower away. When he attempted to lift it, his back began to pain him.
* % ‡ j{i #
“Q Now, the pain that he complained of on that occasion was not the same sort of pain that had existed prior to the operation?
“A He stated that himself, that' it wasn’t the pain. I asked him if it was the same pain that he had before and he said no, that this was a different type of pain. It didn’t resemble what existed before the operation.
“Q Was it your professional opinion, then, sir, that he had probably torn a few of the number of attached muscle fibers to the dorsal spine and the lamina at the site of the surgery ?
“A It was, yes.
“Q It was your opinion that he had torn this in the action of trying to lift this heavy thing?
“A That’s right. I think that his subsequent history confirmed that.
* * * * * *
“A Well, I feel that he hadn’t evoked a recurrence of any difficulties at the operative site, and that he hadn’t evoked any signs of a second ruptured disc. It was purely muscular trauma that he had sustained.
******
“Q Did you feel that the pain he described to you, on the occasion that you last saw him, on the 4th of September, 1963, was disabling?
“A Well, I felt that it was sufficient to account for the percentage of permanent disability that I gave him, which was 25 per cent.
“Q You mean 25 per cent of the back?
* * * * * *
"A Well, you can't have a body without a back. It has to be the body, of the whole.”
Dr. Gernon Brown, who was not the treating physician, but who examined Plaintiff, testified:
“Q All right, sir. Now, from your examination of him, Dr. Brown, *334 and assuming, for the purpose of your answer, these facts that I have given you as to his activities since August or September of ’63, you do believe that the performance of this type of work, as a common laborer, as an ordinary laborer, would be deleterious.to his health?
“A Well, I don’t think so. I don’t think that. Of course, so many things, so many factors are involved ' in saying any work is deleterious to your health, but I doubt whether this would be substantially related, to his back or substantially change his condition. ' I • don’t think it' ' would, that I would consider it deleterious to him as an individual.”
Defendant’s'counsel challenges the failure of Plaintiff to produce Df. Vial, brother of Plaintiff’s, attorney, to testify concerning his treatment of Plaintiff after he left Avon-dale Shipyards in June, 1964, when Plaintiff complained he had to quit work because of, his back pains and was referred by attorney Vial to Dr. Vial (his brother) for treatment.
Faihire to produce a material witness does creáte an inference against the party' 'who; having the ..opportunity, yet fails to produce such witness. Counsel stated ! his brother ..merely -gave Plaintiff heat treatments, but made no examination of Plaintiff for which reason he did not produce Dr. Vial, believing his testimony would add nothing to Plaintiff’s testimony except to confirm his giving heat treatments.. . . '
 Clearly, Plaintiff suffered serious injury to 'his spine that required serious surgery) that, in good faith) he continued to work, even in pain, because he had a wife and family to support. We are satisfied from the testimony that he continued to suffer pain up to the date of the trial. Defendant is protected as it can require' Plaintiff to submit to a medical 'examination in six months to determine if his disability has ceased or diminished. LSA-R.S. 23 1331. See Lavergne v. Southern Farm Bureau Casualty Ins. Co., La.App., 171 So. 2d 751; Andrus v. Great American Ins. Co., La.App., 161 So.2d 109; Parker v. General Earthwork Service, La.App., 103 So.2d 573.
The judg'ment is therefore affirmed; Defendant to pay all costs in both courts.
Judgment affirmed.